Michael E. Quiat, Esq.
Atty ID No. 015911985
USCHER, QUIAT, USCHER & RUSSO
A Professional Corporation
433 Hackensack Avenue, 2nd Floor
Hackensack, NJ 07601
Phone  201-342-7100
Fax     201-342-1810
*Attorneys for Plaintiff, Rita Shalhoub*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RITA SHALHOUB, | Civil Action No. _____ |
| Plaintiff, | ECF CASE |
| vs. | |
| NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, | COMPLAINT AND JURY DEMAND |
| Defendant. | |

Plaintiff, RITA SHALHOUB, by way of Complaint against the Defendant, NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY (hereinafter "Northwestern Mutual" or "Defendant'), alleges as follows:

1. Plaintiff is a resident of the State of New Jersey, County of Bergen, with a principal residence in Demarest, New Jersey.

2. Defendant, Northwestern Mutual, is a disability insurance carrier licensed to do business in the State of New Jersey with a principal place of business in Milwaukee, Wisconsin.

3. Jurisdiction and venue are proper in this Court pursuant to 28 USC §1332 and 28 USC §1391 in that the parties are residents of different states and the amount in controversy is in excess of $75,000.00.

## ESSENTIAL FACTS

**A.     Background**

4.     Plaintiff, Rita Shalhoub (hereinafter referred to as "Ms. Shalhoub" or "Plaintiff"), is a 63-year-old woman who lives in Demarest, New Jersey.

5.     On or about August 2, 1989, the Defendant issued to the Plaintiff an Individual Disability Income Policy, No. D-689-189. A copy of said Policy, together with all subsequent amendments, are attached hereto collectively as **Exhibit A**. This individual policy insured the Plaintiff against total disability, which is defined as follows:

> "**Total Disability.** Until the end of the Initial Period, the Insured is totally disabled when he is unable to perform the principal duties of his occupation. After the Initial Period, the Insured is totally disabled when he is unable to perform the principal duties of his occupation and is not gainfully employed in any occupation." (See **Exhibit A**).

6.     This policy also insured the Plaintiff against partial disability, which is defined as follows:

> "**Partial Disability**. The Insured is partially disabled when:
> a. He is unable to perform one or more of the principal duties of his occupation; or to spend as much time at his occupation as he did before the disability started; and
> b. He has at least a 20% Loss of Earned Income." (See **Exhibit A**).

7.     This policy contained the following provision for collection of lifetime benefits:

> "**1.7 Lifetime Benefit for Total Disability.** If page 3 provides that the Maximum Benefit Period has a lifetime benefit for total disability, then the Full Benefit is payable as long as total disability continues during the lifetime of the Insured, provided:
> - The Insured is totally disabled on the policy anniversary that follows his 60th birthday; and
> - The total disability continues beyond the policy anniversary that follows his 65th birthday." (See **Exhibit A**).

8. Page 3 of Plaintiff's Policy provides:

"Maximum Benefit Period: To August 2, 2019. But not less than 24 months of benefits. With lifetime for total disability as provided in Section 1.7." (See **Exhibit A**).

9. The Policy provides a set benefit in the amount of $1,000.00 per month.

10. Plaintiff is trained as a paralegal. In this capacity, she worked as for the law firm of DeCotiis, FitzPatrick, Cole & Giblin, LLP, from March 2007 to September 2009. At that job, Plaintiff worked an average of 40 hours per week.

11. As set forth above, "Total Disability" is defined in the Policy as not being able to perform the principal duties of Plaintiff's **own occupation at the time of her disability**.

12. Plaintiff was diagnosed with invasive breast cancer in January 2012 at age 57. As a result of this diagnosis, Plaintiff underwent radiation treatments for 6 weeks from approximately June 2012 to early August 2012.

13. Plaintiff also suffers from a herniated disk (C3-C4) in her cervical spine from a neck injury she sustained on June 18, 2015.

14. As a result of Plaintiff's past cancer treatments, Plaintiff now suffers from chronic fatigue, as well as constant left arm pain which results from the removal of a lymph node completed during her cancer treatments.

15. As a result of Plaintiff's neck injury, she suffers from chronic neck pain which limits her cervical range of motion, causes severe and painful crepitus upon neck movement, and contributes to her chronic fatigue.

16. Plaintiff also suffers from chronic tinnitus in her left ear since February 12, 2015, as a result of a stranger's assault upon her involving an unusually aggressive kiss on her left ear.

17. Plaintiff has also been diagnosed with anxiety, and as a result of this condition, she frequently suffers from debilitating panic attacks.

18. Shortly after being diagnosed with breast cancer in January 2012, Plaintiff made a claim for disability benefits under the terms of her Individual Disability Income Policy. Her disability claim was and has been continuously supported by her internist, Glenn Brauntuch, MD.

19. Defendant approved Plaintiff's claim for benefits in a letter dated March 13, 2012. (See **Exhibit B**). In this letter, Defendant asserted that Plaintiff's disability status was "Partial Disability" under the terms of the Policy, with the effective date of disability being January 24, 2012.

20. Notwithstanding, from May 2012 through October 2012, Defendant sent Plaintiff a "Statement of Disability Benefits" along with her disability benefit check every month. On each of these statements, Defendant asserted that Plaintiff's disability status was "Total Disability". (See **Exhibit C** for Statements of Disability Benefits, May-October 2012).

21. Defendant sent Plaintiff a letter dated October 1, 2012, which informed her that she had been approved for "Total Disability" with an established date of March 29, 2012. (See **Exhibit D**).

22. In a letter dated October 31, 2012, Defendant notified Plaintiff that the status of her claim for benefits had been changed once again to "Partial Disability". (See **Exhibit E**).

23. Plaintiff turned 60 years old on March 1, 2014. The policy anniversary following her 60th birthday was August 2, 2014.

24. In the months of April, May and June 2014, Plaintiff received a Statement of Disability Benefits which stated that her disability status had once again been determined to be "Total Disability" under the terms of the Policy. (See **Exhibit F**).

25. The Plaintiff would satisfy the first prong of the two-part test for lifetime benefits if she was considered "totally disabled" on the policy anniversary following her 60th birthday, or August 2, 2014.

26. In July 2014, however, Defendant sent Plaintiff a Statement of Disability Benefits which stated that her disability status had once again been switched to "Partial Disability". (See **Exhibit G**).

27. In a letter dated September 9, 2014, Defendant notified Plaintiff that since she was considered "partially disabled" on August 2, 2014, she had not satisfied the first prong of the two-part test for lifetime benefits, and therefore the Maximum Benefit Period would expire on the policy anniversary following her 65th birthday, or August 2, 2019. As a result, Defendant stated that she was not entitled to lifetime benefits. (See **Exhibit H**).

28. In April 2015, Defendant changed Plaintiff's disability status yet again, and in the Statement of Disability Benefits, Defendant once again asserted that Plaintiff's disability status was that of "Total Disability". (See **Exhibit I**).

29. In May 2015, the Defendant changed Plaintiff's status from "Total Disability" to "Partial Disability", marking the sixth time in the course of this three year claim that Defendant changed the Plaintiff's disability status without any change in Plaintiff's condition.

30. The Defendant's decision in this case to switch Plaintiff's disability status from "Total" to "Partial" at some time between June 16, 2014 and July 16, 2014 was wrongful, made without any basis in medical or vocational evidence, and was made with the intention of

preventing Plaintiff from collecting lifetime benefits to which she would otherwise be entitled under the terms of the Policy.

## AS AND FOR A FIRST CAUSE OF ACTION

31. Plaintiff repeats and re-alleges each and every allegation set forth above at paragraphs 1-30, as if fully set forth again herein.

32. By virtue of the foregoing, the Defendant has breached its contract with the Plaintiff causing Plaintiff harm and damages.

## AS AND FOR A SECOND CAUSE OF ACTION

33. Plaintiff repeats and re-alleges each and every allegation set forth above at paragraphs 1-32, as if fully set forth again herein.

34. By virtue of the foregoing, Defendant has breached its duty of good faith and fair dealing, and has acted in bad faith, thereby damaging the Plaintiff.

## AS AND FOR A THIRD CAUSE OF ACTION

35. Plaintiff repeats and realleges each and every allegation set forth above at paragraphs 1-34, as if fully set forth again herein.

36. By virtue of the foregoing, Defendants' conduct violated the New Jersey Consumer Fraud Act, N.J.S.A. 56.8-2 *et seq.*

37. This conduct includes, but is not limited to:

   a. Failing and refusing to honestly interpret and apply the terms of its policy, so as to provide benefits to its insured as legally required;

   b. Selling the need for "security" and "safety" and "protection" to the general public in order to induce purchase of its insurance products, knowing full

      well that its business model and profit-making priorities were inconsistent with, and likely to preclude "security", "safety" or "protection";

    c.  Systematically exploiting older disabled individuals, by denying benefits to such individuals, when they are physically and financially vulnerable and diminished, and otherwise limited in their ability to enforce their rights under the policies which they purchased from the Defendant in good faith, and upon which they had dutifully paid substantial premiums, over many years;

    d.  Engaging in a myriad of other unfair and deceptive claims handling practices, designed to deny benefits rightfully due to its insureds, and defeating the reasonable expectations of its insureds.

38.    These deceptive and unfair claims practices go beyond "a private contract dispute as to policy coverage" and constitute "consumer oriented conduct" involving a standard-issued policy, marketed, sold and available to all consumers in New Jersey.  As such, these unfair and deceptive claims handling practices are aimed not just at Plaintiff, but at other policy holders in New Jersey, and therefore have a broader impact on New Jersey consumers at large.

WHEREFORE, Plaintiff requests that this Court enter judgment in favor of the Plaintiff and against the Defendant as follows:

    (a)  On the First Cause of Action:

        (i)  Ordering, adjudging and decreeing that Plaintiff was totally disabled on August 2, 2014 within the meaning of the said policy attached as **Exhibit A** hereto, and remained totally disabled thereafter, which entitles Plaintiff to lifetime disability benefits;

        (ii)       Granting to Plaintiff her costs of suit, including reasonable attorney's fees.

(b)      On the Second Cause of Action:

        (i)       Ordering, adjudging and decreeing that Plaintiff was totally disabled on August 2, 2014 within the meaning of the said policy attached as **Exhibit A** hereto, and remained totally disabled thereafter, which entitles Plaintiff to lifetime disability benefits;

        (ii)      Granting to Plaintiff extra contractual, punitive damages for its bad faith behavior, consistent with the laws of the State of New Jersey; and

        (iii)     Granting to Plaintiff her costs of suit, including reasonable attorney's fees.

(c)      On the Third Cause of Action:

        (i)       Ordering, adjudging and decreeing that Plaintiff was totally disabled on August 2, 2014 within the meaning of the said policy attached as **Exhibit A** hereto, and remained totally disabled thereafter, which entitles Plaintiff to lifetime disability benefits;

        (ii)      Granting to Plaintiff treble damages; and

        (iii)     Granting to Plaintiff her costs of suit, including reasonable attorney's fees.

                            USCHER QUIAT, USCHER & RUSSO
                            A Professional Corporation
                            433 Hackensack Avenue, 2nd Floor
                            Hackensack, NJ 07601
                            Phone  201-342-7100
                            Fax     201-342-1810

Dated:  December 20, 2017        By:    /s/Michael E. Quiat
                                                 MICHAEL E. QUIAT
                                                 Atty ID No. 015911985
                                                 ***Attorney for Plaintiff***
                                                 ***Rita Shalhoub***

## **JURY DEMAND**

Plaintiff hereby requests a trial by jury on all issues.

                USCHER QUIAT, USCHER & RUSSO
                A Professional Corporation
                433 Hackensack Avenue, 2nd Floor
                Hackensack, NJ 07601
                Phone  201-342-7100
                Fax     201-342-1810

Dated:  December 20, 2017        By:    /s/Michael E. Quiat
                MICHAEL E. QUIAT
                Atty ID No. 015911985
                *Attorney for Plaintiff*
                *Rita Shalhoub*

G:\Disability\Shalhoub, Rita\Complaint - NWM.docx